**UNITED STATES, Appellee,**

v.

**Specialist Michael CLEMENTE, United States Army, Appellant.**

**ARMY 9700851.**

U.S. Army Court of Criminal Appeals.

28 July 1999.

For Appellant: Major Leslie A. Nepper, JA; Captain Angelines McCaffrey, JA (on brief); Captain Patricia A. Lewis, JA.

For Appellee: Colonel Russell S. Estey, JA; Captain Mary E. Braisted, JA (on brief).

Before CAIRNS, Senior Judge, KAPLAN, and MERCK, Appellate Military Judges.

## OPINION OF THE COURT

CAIRNS, Senior Judge:

A military judge, sitting as a general court-martial, convicted the appellant on his pleas of guilty of willfully disobeying a superior commissioned officer (two specifications), wrongfully using cocaine (two specifications), and larceny (five specifications), in violation of Articles 90, 112a, and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 890, 912a, and 921 [hereinafter UCMJ]. The convening authority approved the adjudged sentence consisting of a bad-conduct discharge, confinement for eighteen months, forfeiture of all pay and allowances, and reduction to Private E1.

In his sole assignment of error, the appellant alleges that his trial defense counsel was ineffective by failing to call witnesses to testify during sentencing, failing to inform the appellant after trial that his clemency matters were due for submission to the convening authority, and submitting matters to the convening authority without consulting the appellant. We find no merit to the appellant's assignment of error and affirm.

## BACKGROUND

In accordance with a pretrial agreement, the appellant pled guilty, as specified above, in exchange for which the convening authority agreed to disapprove any confinement adjudged in excess of eighteen months. The appellant admitted in a stipulation of fact and during his guilty plea inquiry that he stole money, electronics, and military equipment from three roommates in the barracks. He also stole a video cassette recorder from his battalion. In each instance, the appellant used his ill-gotten gains to buy crack cocaine, and he wrongfully used the crack cocaine on two separate occasions.

After several of the thefts were reported, the appellant's company commander identified the appellant as the perpetrator of two larcenies. As a result, the commander pulled the appellant's pass privileges and ordered the appellant not to wear civilian clothes or to leave the military installation. The appellant willfully disobeyed the order when, after stealing again from a roommate, he left the installation in civilian clothes to buy crack cocaine. Subsequently, the appellant's battalion commander ordered the appellant not to leave the installation. Again, the appellant stole from a roommate and left the installation, in violation of the order, for the purpose of selling the property for money with which to purchase cocaine.

During the sentencing phase of the trial, the government called one of the appellant's roommates to testify in aggravation about how being victimized by a fellow soldier/roommate destroys the trust necessary in a military organization. The trial defense counsel attempted unsuccessfully to prevent the testimony. The defense sentencing case consisted of appellant's unsworn statement, in which he admitted that all his problems stemmed from his drug problem. He stated that after one "incident," he had unsuccessfully attempted to refer himself to the Alcohol and Drug Abuse Prevention and Control Program (ADAPCP), but "they" told him to wait for his commander to act. He further related that since he had been in pretrial confinement, he felt better because he participated in counseling and treatment, job skills training, group therapy, and an exercise program. Finally, he stated that he had reimbursed Specialist (SPC) Nobles, one of his victims, for the money he had stolen from him.

Before the trial adjourned, the appellant stated that he had been advised of his post-trial and appellate rights; he did not have any questions about those rights; and he had signed Appellate Exhibit III, entitled POST–TRIAL AND APPELLATE RIGHTS. In Appellate Exhibit III, the appellant acknowledged that he understood that he had ten days after receipt of the staff judge advocate's post-trial recommendation to submit

matters to the convening authority. The allied papers reflect that the appellant was served the post-trial recommendation on 29 July 1997. Forty days later, on 7 September 1997, the trial defense counsel submitted a clemency petition on appellant's behalf, but the appellant did not submit anything personally to the convening authority. The convening authority took final action on 11 September 1997.

In an affidavit submitted in support of his assignment of error, the appellant states that while in post-trial confinement, he tried to contact his trial defense counsel several times regarding his clemency matters, but his counsel never contacted him about his post-trial submissions. If he had been "given the opportunity to submit clemency matters," he asserts that he would have submitted letters recommending clemency from a warrant officer, two senior noncommissioned officers, and SPC Nobles, one of the victims of his larceny. The appellant did not, however, submit affidavits from these prospective witnesses or otherwise specify what they would have said. The appellant also claims in his affidavit that he told his counsel that he wanted those same four individuals to testify on his behalf during sentencing, but that his counsel told him that "because he had obtained a deal for eighteen months that those sentencing witnesses would not be necessary." Again, the appellant does not allege what these witnesses would have said had they testified. Finally, the appellant submitted a handwritten letter, dated "Sept 1997," that the appellate defense counsel avers appellant "would have submitted to the convening authority had his trial defense counsel contacted him and informed him of when his clemency matters were due to the convening authority."

## LAW

■ Under the U.S. Constitution, Article 27, UCMJ, and appellate case law, members of the armed forces are entitled to effective assistance of counsel before trial, at trial, and post-trial. *See United States v. Russell*, 48 M.J. 139, 140 (1998); *United States v. Hicks*, 47 M.J. 90, 92 (1997); *United States v. Fluellen*, 40 M.J. 96, 98 (C.M.A.

1994); *United States v. Scott*, 24 M.J. 186, 187–88 (C.M.A.1987). The standard for measuring claims of ineffective assistance of counsel is the two-pronged test enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Scott*, 24 M.J. at 188. The first prong requires an appellant to demonstrate that his counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. The second prong requires an appellant to show that his counsel's deficient performance prejudiced him to the extent of depriving him of "a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

■ The burden to establish each *Strickland* prong is squarely upon the shoulders of an appellant who asserts ineffective assistance of counsel. "When pressing an appellate claim of ineffective assistance of counsel, an appellant 'must surmount a very high hurdle.'" *United States v. Smith*, 48 M.J. 136, 137 (1998) (quoting *United States v. Moulton*, 47 M.J. 227, 229 (1997)). Under *Strickland*, an appellant must first overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689, 104 S.Ct. 2052. Because "[j]udicial scrutiny of counsel's performance must be highly deferential," the appellate courts will not second-guess the strategic or tactical decisions of the trial defense counsel. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052; *see also United States v. Morgan*, 37 M.J. 407, 410 (C.M.A. 1993); *United States v. Rivas*, 3 M.J. 282, 289 (C.M.A.1977).

■ "To establish that trial defense counsel's conduct was below an objective standard of reasonableness, an appellant has the responsibility to bring to an appellate court's attention facts rather than mere speculation." *Russell*, 48 M.J. at 140–41. Thus, when claiming ineffective assistance of counsel for failure to present the testimony of a particular witness, an appellant must specifi-

cally allege the precise substance of the witness' missing testimony. *See Russell,* 48 M.J at 141; *Moulton,* 47 M.J. at 229, *cert. denied,* 522 U.S. ——, 118 S.Ct. 1048, 140 L.Ed.2d 112 (1998). Similarly, when an appellant attacks his trial defense counsel for failure to submit clemency matters, he must specify what he would have submitted, but for his counsel's alleged deficiency. *See United States v. Hood,* 47 M.J. 95, 98 (1997).

▮ With respect to post-trial responsibilities, trial defense counsel must consult with the client regarding clemency and other matters, and must comply with the client's desires regarding submissions to the convening authority. *See Hood,* 47 M.J. at 97. Hence, a defense counsel should neither submit matters over his client's objection, nor fail to present matters that the client desires the convening authority to consider. *See Hicks,* 47 M.J. at 93. To successfully prosecute a claim of ineffective assistance of counsel regarding these matters, an appellant must also show that his counsel's deficient performance prejudiced his case. For cases in which the claimed deficiency involves presentation of post-trial matters, or failure to present such matters to the convening authority, prejudice is measured by whether an appellant has "shown a 'reasonable probability' of more favorable action by the convening authority" absent the deficient performance. *Hood,* 47 M.J. at 98.

## DISCUSSION

The appellant has failed to overcome the strong presumption that his trial defense counsel's performance was within the range of reasonable professional performance expected of defense counsel during the sentencing phase of representation. As to the post-trial phase of representation, without deciding whether the appellant's trial defense counsel was deficient in performance, we hold that the appellant failed to establish the prejudice prong of the *Strickland* standard.

### Failure to Call Sentencing Witnesses

▮ With respect to the appellant's charge that the trial defense counsel failed to call certain witnesses during the sentencing case, the appellant has failed to demonstrate precisely what the witnesses would have said on his behalf. Instead, he simply asserts that his counsel advised him that he did not need the sentencing witnesses because he had a pretrial agreement. To establish that his counsel's performance in this regard fell below an objective standard of reasonableness, the appellant must demonstrate that the witnesses were available to testify and that their testimony would have assisted the defense. *Russell,* 48 M.J. at 141.

We will assume, only for purposes of analysis, that the appellant told his trial defense counsel that he wanted these witnesses to testify on sentencing, and that the trial defense counsel advised him they were unnecessary because of the pretrial agreement. Even under this assumption, the appellant has failed to show, as an essential predicate to carrying his burden on his claim of ineffective assistance of counsel, that these witnesses were prepared to give favorable testimony. "[A]n appellant has the responsibility to bring to an appellate court's attention facts rather than mere speculation." *Russell,* 48 M.J. at 141. If an appellant fails to show that such witnesses are available and favorable, then the claim of deficient performance of counsel under prong one of *Strickland* necessarily fails. *See Moulton,* 47 M.J. at 229. Under *Strickland,* we must not speculate, nor grant relief based on speculation, as the appellant's complaint necessarily begs us to do. Instead, we hold that the appellant has failed to carry his burden under *Strickland.*

### Failure to Assist During the Post–Trial Process

▮ Similarly, the appellant has failed to carry his burden in establishing ineffective assistance of counsel during the post-trial process. Once again, the appellant asserts that he would have submitted "letter[s] recommending clemency" from the same witnesses he complains did not testify during sentencing, but he has not provided this court with affidavits, statements, or even summaries of the substance of those letters. We hold that with respect to this complaint, the appellant has failed in his burden to affirmatively demonstrate his counsel's deficient performance because the appellant has

not advised this court of precisely what favorable evidence he was deprived. *See Moulton*, 47 M.J. at 229.

■ The appellant also complains that, since his counsel did not contact him while in post-trial confinement, he was deprived of effective representation because his personal letter of clemency was not submitted to the convening authority. We will assume, arguendo, that the appellant's trial defense counsel failed to consult with the appellant regarding the submission of post-trial clemency matters. Under this assumption, we necessarily assume, for analysis purposes only, that appellant has met prong one of the *Strickland* standard. The appellant still bears the burden to establish that he was prejudiced by his counsel's deficiency. The appellant has not carried his burden. As mentioned above, he has failed to offer specific favorable letters from others or witness statements as evidence of what he would have submitted to the convening authority. Although the appellate counsel offered a letter from the appellant, asserting that the appellant would have submitted it to the convening authority, counsel has failed to persuade us that there was any reasonable probability that, but for the assumed deficiency, the convening authority would have granted clemency.

The appellant's proffered letter, consisting of two short handwritten pages, asks the convening authority to reduce his confinement from eighteen to eleven months. The appellant supports his request by stating that he worked hard in confinement to "put [his] life back on track" by attending job skills training, victim impact class, drug and alcohol classes, Narcotics Anonymous and Alcoholics Anonymous meetings, and religious services. Further, he avers that he was a good soldier before foolishly involving himself in drugs and alcohol, and that he had made some restitution.

We are satisfied that, had this letter been presented to the convening authority, there was no reasonable probability of a more favorable action by the convening authority. Even though clemency is a highly discretionary act, it is unreasonable to believe that the convening authority would have been moved by such a letter, given its content, the totality of the facts, and the nature of the appellant's crimes, which included a breach of trust by stealing from fellow soldiers, violation of orders of two commanders, and serious drug offenses. Moreover, the appellant had offered to plead guilty in exchange for a sentence limitation capping confinement at eighteen months, the precise sentence of the court-martial. Considering all these circumstances, we hold that the appellant has failed to demonstrate prejudice. Viewing the entire record, we are confident that the appellant was afforded effective assistance of counsel and that his trial, including the post-trial processing of his case, was fair and reliable.

In reaching our decision in this case, we have considered and applied the principles enunciated in *United States v. Ginn*, 47 M.J. 236 (1997). Under those principles, we conclude that our authority is clear to decide the issues of ineffective assistance of counsel without resort to further proceedings to expand the record in this case.

Accordingly, the findings of guilty and the sentence are affirmed.

Judge KAPLAN and Judge MERCK concur.