# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, GALLAGHER, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist CHARLES A. FOXX**
**United States Army, Appellant**

ARMY 20110272

Headquarters, Fort Bliss
David H. Robertson and Robert Bowers, Military Judges
Colonel Francis P. King, Staff Judge Advocate

For Appellant: Colonel Patricia A. Ham, JA; Lieutenant Colonel Imogene M. Jamison, JA; Major Jacob D. Bashore, JA (on brief).

For Appellee: Major Robert A. Rodrigues, JA; Major Catherine L. Brantley, JA; Captain Jessica J. Morales, JA (on brief).

29 May 2013

---------------------------------
OPINION OF THE COURT
---------------------------------

COOK, Senior Judge:

A military judge sitting as a special court-martial convicted appellant, pursuant to his pleas, of bigamy in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (2006) [hereinafter UCMJ]. The military judge sentenced appellant to a bad-conduct discharge, confinement for two months, forfeiture of $900.00 pay per month for two months, and reduction to the grade of E-1. The convening authority (CA) approved the adjudged sentence.

Appellant raises two assignments of error to this court, both of which merit discussion but no relief.[1]

---

[1] Appellant also personally raises several issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), none of which merit discussion or relief.

**BACKGROUND**

The instant case under review is a result of appellant's second court-martial in 2011. Appellant's first court-martial took place on 27 January 2011 and Captain (CPT) TS[2] served as appellant's trial defense counsel. Appellant, then a Sergeant First Class (SFC), was convicted of wrongfully and without authority wearing numerous badges and tabs on multiple occasions. His approved sentence included confinement for four months and reduction to the grade of E-4. Appellant, on 7 January 2011, while awaiting trial on this first set of charges and legally married to Ms. WF, married Ms. WO. This second marriage led to appellant being court-martialed for bigamy on 5 April 2011.

Appellant's first assignment of error, in general, alleges his primary trial defense counsel, the same CPT TS as at the first trial, provided ineffective assistance of counsel because he: (1) failed to conduct a proper investigation and did not present "vital" evidence during sentencing; and (2) "allowed" appellant, who had sixteen years of service, to request a bad-conduct discharge during sentencing. In his second assignment of error, appellant alleges he was denied effective post-trial assistance of counsel because the same CPT TS failed to submit two letters as part of his request for clemency to the convening authority.

**LAW AND DISCUSSION**

*Pretrial and Trial Ineffective Assistance of Counsel Allegations*

As a preliminary matter, we note neither appellant nor appellate counsel is challenging appellant's conviction for bigamy. Rather, appellant and appellate counsel allege appellant's sentence, particularly the adjudged bad-conduct discharge, was a direct result of the ineffective assistance of counsel provided by CPT TS. Ultimately, appellant and appellate counsel request this court set aside the sentence and order a sentence rehearing.

Regarding the first assignment of error, we begin by reviewing the allegation that CPT TS provided ineffective assistance of counsel by "allowing" appellant to request a bad-conduct discharge. In his post-trial affidavit, appellant claims CPT TS encouraged him to request a bad-conduct discharge at trial; that CPT TS failed to explain he was only facing twelve months of confinement; and that in response to appellant expressing "concern for losing my career," CPT TS told him that appellant could ask for a bad-conduct discharge at trial and then, if he received a bad-conduct discharge, CPT TS would assist appellant in upgrading his discharge, joining the

---

[2] Captain TS has subsequently been promoted to Major and signed his post-trial affidavit as a Major. For simplicity purposes, we will continue to refer to now Major TS as CPT TS.

National Guard, and coming onto active duty, from where appellant could ultimately retire.

In contrast, CPT TS, in his post-trial affidavit, states he recommended appellant "fight for retention" at the second court-martial; that he in fact advised appellant the maximum confinement he was facing was only twelve months; and that he never advised appellant he could get his bad-conduct discharge upgraded and subsequently re-enter and then retire from the Army. Captain TS further stated, contrary to his recommendation, appellant's "primary goal from the time he entered confinement" as a result of his first court-martial "was to minimize his confinement, with little regard to any secondary effect on his future in the Army or potential for future retirement."

In evaluating ineffective assistance of counsel allegations, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This standard requires appellant to demonstrate: (1) that counsel's performance was deficient, and (2) that this deficiency resulted in prejudice. *Id*. at 687. Under the first part of this test, appellant must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The relevant issue is whether counsel's conduct failed to meet an objective standard of reasonableness or whether it was outside the "wide range of professionally competent assistance." *Id*. at 690. "On appellate review, there is a 'strong presumption' that counsel was competent." *United States v. Grigoruk*, 56 M.J. 304, 306-307 (C.A.A.F. 2001) (citing *Strickland*, 466 U.S. at 689). The second part of this test is met by showing a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

Because appellant and counsel have filed post-trial affidavits that to some extent conflict, pursuant to *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997), we have analyzed whether a post-trial evidentiary hearing is required. After applying the fourth *Ginn* principle, we find such a hearing is not required in this case. Although appellant's affidavit is factually adequate on its face, in accordance with the fourth *Ginn* principle, "the appellate filings and the record as a whole 'compellingly demonstrate' the improbability of those facts" and therefore we may "discount those factual assertions and decide the legal issue." *Ginn*, 47 M.J. at 238."

At the outset, the record of trial "compellingly demonstrates" appellant was aware the maximum sentence to confinement was twelve months. Following the providency inquiry, the trial counsel, on the record, stated the maximum confinement appellant faced as a result of his guilty plea was twelve months. Appellant's defense counsel expressly agreed with the stated maximum punishment and the military judge then informed appellant the maximum confinement he faced at trial was twelve months. Appellant responded he understood the military judge and

that he had no questions about the maximum punishment to confinement being twelve months.

The record of trial also unequivocally contradicts appellant's assertion that CPT TS encouraged appellant to request a bad-conduct discharge despite having sixteen years of military service. To the contrary, the record "compellingly demonstrates" the decision to argue for such a discharge was appellant's alone; appellant's primary concern at sentencing was to avoid confinement; and CPT TS fully advised appellant of the ramifications of a punitive discharge.

First, during the government's closing argument at sentencing, the trial counsel specifically requested that appellant receive at least seven months of confinement if the military judge did not adjudge a bad-conduct discharge. It was only after this request that appellant sought the attention of his defense counsel and requested he argue for a bad-conduct discharge in lieu of confinement. Specifically, the record of trial contains the following:

> Military Judge (MJ): Captain [TS], are you prepared to present argument on behalf of the accused?
>
> CPT TS: Just one moment, Your Honor. I am conferring with my client.
>
> MJ: Sure.
>
> [Pause]
>
> CPT TS: Ready, Your Honor.
>
> [The accused and his counsel continued to confer.]
>
> CPT TS: There is a matter we need to take up, Your Honor.
>
> MJ: Captain [TS], when you say, "We," who do you mean?
>
> CPT TS: The court, Your Honor.
>
> MJ: The court. Okay.
>
> [Pause]

4

> CPT TS: My client has decided that he would like for me to argue for a bad-conduct discharge, Your Honor. We are marking the memorandum as an Appellate Exhibit. (App. Ex. V).

Second, the record reflects, in order to ensure appellant understood the meaning of a punitive discharge and that he intended to make such a request, the military judge confirmed with appellant that: appellant was personally requesting a bad-conduct discharge; appellant was aware of the impact this discharge would have on his benefits; appellant's express desire was to be discharged from the Army with a bad-conduct discharge; and appellant consented to CPT TS arguing for a bad-conduct discharge. Most notably, appellant and the military judge engaged in the following dialogue:

> MJ: Do you understand a bad-conduct discharge terminates your military status and will deprive you of any retirement benefits, including retired pay?
>
> ACC: Yes, Your Honor, I do.
>
> MJ: Have you thoroughly discussed your desires with your defense counsel?
>
> ACC: Yes, I have, Your Honor.
>
> MJ: Do you believe you fully understand the ramifications of a bad-conduct discharge?
>
> ACC: Yes, Your Honor, I do.
>
> MJ: Are you aware that if you do not receive a punitive discharge from this court-martial, then your chain of command may very well try to administratively separate you from the service?
>
> ACC: Yes, Your Honor, I do.
>
> MJ: Are you also aware that an administrative separation is considered much less severe than a discharge from a court-martial and will not stigmatize you with the devastating and long-term effects of a discharge from a court-martial?
>
> ACC: Yes, Your Honor, I do.

> MJ: Specialist Foxx, knowing all that I and your defense counsel have explained to you, is it your express desire to be discharged from the service with a bad-conduct discharge?
>
> ACC: Yes, Your Honor.

Third, the record then reflects the court-martial was recessed for approximately fourteen minutes. When the military judge called the court back to order, he reviewed Appellate Exhibit (App. Ex.) V with appellant. This appellate exhibit is a memorandum with a subject line entitled "Sentencing Argument for Punitive Discharge" and is dated 5 April 2011, the date of appellant's second court-martial. The military judge, on the record, then established: appellant personally signed App. Ex. V; appellant reviewed App. Ex. V with CPT TS; appellant reviewed paragraph 9 of App. Ex. V wherein appellant affirmatively declared that he consented to "my defense counsel stating in argument that I desire to be discharged with a bad-conduct discharge if it will preclude an extended period of confinement"; and appellant affirmatively stated he wanted CPT TS "to argue for a punitive discharge in lieu of lengthy confinement."[3] Therefore, in reviewing the record of trial, it is clear appellant desired to seek a bad-conduct discharge in an effort to avoid confinement, and he was thoroughly aware of the consequences of such a request.

Lastly, in addition to what transpired at the guilty plea and during the presentencing proceedings, the appellate filings reveal appellant previously submitted a request to be administratively separated in lieu of court-martial. Following his first court-martial, appellant submitted a voluntary request for discharge. In this request, one that appellant personally signed, appellant acknowledged:

> I understand that if my request for discharge is accepted, I may be discharged under conditions other than Honorable. I request a General Discharge. I have been advised and understand the possible effects of an Under Other Than Honorable Discharge . . . and that as a result of the issuance of such a discharge, I will be deprived of many or all Army benefits, that I may be ineligible for

---

[3] Appellant's admissions and assertions during the presentencing phase are of the same nature that our superior court, under the fifth *Ginn* principle, has held may be examined in a guilty plea inquiry to discount appellant's assertions on appeal. *See Ginn*, 47 M.J. at 248 (when an allegation of ineffective representation contradicts admissions made by appellant during a guilty plea inquiry, we may decide the issue on the basis of the appellate file, including admissions by the appellant during the guilty plea and his expression of satisfaction with counsel).

6

> many or all benefits administered by the Veterans
> Administration, and that I may be deprived of my rights
> and benefits as a veteran under Federal and State law . . . .
> I further understand that there is neither automatic
> upgrading nor review by any Government agency of a less
> than honorable discharge and that I must apply to the
> Army Discharge Review Board or the Army Board of
> Correction of Military Records if I wish review of my
> discharge.  I realize that the act of consideration by either
> board does not imply that my discharge will be upgraded.

(Gov. App. Ex. 1, Encl. 1).

On 8 March 2011, appellant submitted an additional memorandum in support of his request for administrative discharge, wherein he requested the convening authority discharge him in lieu of his second court-martial.  In his personal memorandum, appellant requested the pending charge of bigamy be dismissed in exchange for his discharge.  In general, appellant agreed to accept the first court-martial conviction, along with the adjudged four months of confinement, and administrative discharge from the service, in exchange for not facing a second court-martial on the bigamy charge.  In this memorandum appellant tellingly stated:

> 5.  Approving this discharge it [sic] will save the Army
> the time and resources necessary to try the case.
> Approving this request will also terminate my opportunity
> to reach 20 years of service and retire, causing me to lose
> tens of thousands of dollars in benefits.

(Gov. App. Ex. 1, Encl. 1).

Therefore, before appellant's second court-martial even began, appellant exhibited a belief that his Army career was irreversibly damaged and demonstrated a clear desire to be separated from the service.  While the request for an administrative discharge in lieu of court-martial does not definitively disprove appellant's allegations, it does indicate a willingness to barter his military retirement to avoid confinement.  Accordingly, appellant's request to be administratively discharged prior to his second court-martial belies his subsequent allegation that CPT TS was the driving force behind the request for a punitive discharge.

In assessing the record of trial and the appellate filings, apart from the conflicting affidavits, it is clear appellant desired to request a bad-conduct discharge in an effort to avoid confinement and he was satisfied with his counsel's advice on the matter.  Thus, although appellant's affidavit is factually adequate on its face, in accordance with the fourth *Ginn* principle, "the appellate filings and the record as a

whole 'compellingly demonstrate' the improbability of those facts, [and this] court may discount those factual assertions and decide the legal issue" without a post-trial evidentiary hearing. *Id*. at 248; *see also United States v. Fagan*, 59 M.J. 238, 247 (C.A.A.F. 2004). Specifically, appellant has ultimately failed to show "that counsel's performance was deficient, and that this deficiency resulted in prejudice" because the record clearly demonstrates appellant was advised of the ramifications of a bad-conduct discharge and the decision to request such a discharge was his alone. *Strickland*, 466 U.S. at 687.

We now turn our attention to appellant's allegation that CPT TS was ineffective because he failed to conduct a proper investigation and present vital evidence to the military judge. As alleged by appellant, this investigation would have consisted of interviewing two witnesses for sentencing purposes and the vital evidence would have been the testimony of these two witnesses. Appellant, in his post-trial affidavit, asserts he "spoke with [CPT TS] on numerous occasions about calling two witnesses on my behalf - [Lieutenant Colonel (LTC) PG] and [Master Sergeant (MSG) SH]." Appellant further states he "never agreed with not calling any live witnesses on my behalf." In response, Captain TS, in his post-trial affidavit, asserts that he made a tactical decision not to call any witnesses on appellant's behalf and, instead, focused on appellant's relationship with his spouse during presentencing.

As an initial matter, having reviewed the record and the affidavits, we conclude, consistent with the principles announced in *Ginn*, that we can resolve appellant's claim without directing a post-trial evidentiary hearing on this specific issue. The central point of contention by appellant is that he provided the names of prospective witnesses to his counsel, and yet CPT TS did not present them. These facts are conceded by CPT TS. Pursuant to CPT TS's affidavit, prior to appellant's first court-martial, appellant provided CPT TS with a list of potential sentencing witnesses. Captain TS and his co-counsel contacted and interviewed these witnesses ("more than six"), to include the same LTC PG and MSG SH. However, CPT TS goes on to explain that he made a tactical decision not to call the witnesses on appellant's behalf at appellant's first court-martial, and this is not refuted by appellant.

In explaining his decision, CPT TS states, except for MSG SH, none of these witnesses had favorable testimony to offer on appellant's behalf. Captain TS further states, in his affidavit, that "[a] consistent theme among them was that [appellant's] duty performance was average or substandard and that [appellant] had accountability issues (e.g., frequent absences during duty hours without explanation or unverified excuses)." Appellant has offered nothing to contradict CPT TS's representations concerning LTC PG, specifically, that LTC PG was interviewed to possibly testify on sentencing at appellant's first court-martial and that LTC PG was not called as a witness in either of appellant's courts-martial because he did not have favorable testimony to offer. Regarding LTC PG, appellant merely states that if CPT TS had

informed appellant that LTC PG was "unwilling to testify," that appellant would have "supplemented my witness list with other supervisors with whom I have worked during my sixteen years of Army service." Thus, appellant has failed to meet his burden to show CPT TS was deficient by not calling LTC PG as a witness. *Strickland*, 446 U.S. at 687.

We next address whether CPT TS was ineffective in not properly investigating the testimony MSG SH had to offer or in not calling MSG SH to testify on sentencing at appellant's second court-martial.

First, appellant, CPT TS, and MSG SH, per their affidavits, agree CPT TS did interview MSG SH prior to appellant's first court-martial. In his affidavit, MSG SH states he was contacted by CPT TS and interviewed as a potential witness regarding appellant's first court-martial. Master Sergeant SH characterizes the conversation as lasting "four minute[s]" and that "for some reason . . . the conversation did not lead to me being called as a witness even though I was willing to testify on [appellant's] behalf." Master Sergeant SH further states that, even with knowledge of appellant's two convictions, he would have testified on appellant's behalf at both trials. The remainder of MSG SH's affidavit describes appellant as "an outstanding NCO" and provides some specific examples of areas in which he believed appellant performed well. Pursuant to his affidavit, CPT TS acknowledges, without going into detail, MSG SH "did have positive things to say about" appellant. Therefore, in regards to whether CPT TS was ineffective in not properly investigating whether MSG SH possessed favorable testimony, we, again, find appellant has failed to meet his burden to show that counsel's performance was deficient. *Strickland*, 446 U.S. at 687.

The final prong left to analyze is, therefore, whether CPT TS was ineffective by not calling MSG SH to testify at appellant's second trial during sentencing. "In weighing such matters, we must give deference to counsel's tactical judgment and not substitute our view with the benefit of hindsight." *United States v. Stephenson,* 33 M.J. 79, 82 (C.M.A. 1991) (quoting *Strickland*, 466 U.S. at 689). Moreover, "heavy deference is given to trial defense counsel's judgments, and this Court presumes counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Morgan*, 37 M.J. 407, 409 (C.M.A. 1993) (citing *Strickland*, 466 U.S. at 689). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.

As contained in his affidavit, CPT TS made the tactical decision not to call MSG SH at the court-martial so as to keep the focus on appellant's troubled relationship with his first wife and minimize the focus on appellant's credibility. Given appellant's previous court-martial for the unauthorized wear of badges and tabs, combined with appellant's second court-martial for bigamy, any good-character or good-soldier witness called on appellant's behalf would have been susceptible to

cross-examination focusing on appellant's lack of integrity, regardless of the positive information they had to offer. It is clear CPT TS engaged in such an analysis regardless of appellant's input, and his decision reflects a tactically sound analysis. *See United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009) (failure to call a witness that could both hurt and help appellant's case is a reasonable tactical decision which does not amount to ineffective assistance of counsel).

Finally, in his post-trial affidavit, appellant acknowledges CPT TS informed him of the interview with MSG SH and the likelihood that MSG SH would not be called as a witness at trial. When appellant asked why, CPT TS told him MSG SH would not be needed. In addition, appellant has failed to acknowledge MSG SH's absence as a sentencing witness at his first court-martial. This decision not to call MSG SH as a witness at appellant's first court-martial not only supports CPT TS's explanation for not calling MSG SH at the second court-martial but also contradicts appellant's assertion that he did not agree "with not calling any witnesses" at his second court-martial. Specifically, to the extent CPT TS employed this same approach at both courts-martial, appellant offers no explanation for why this trial strategy caught him unaware. As to this portion of appellant's assignment of error, in applying the first part of the *Strickland* test, appellant has failed to demonstrate his counsel's performance was deficient. *Strickland*, 446 U.S. at 687.

However, assuming arguendo CPT TS provided deficient performance in failing to call MSG SH as a witness, appellant must then establish such a deficiency resulted in prejudice. *Id*. at 687. To establish prejudice, appellant must demonstrate "a reasonable probability that, but for counsel's [deficient performance] the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Assuming MSG SH testified consistent with his post-trial affidavit, his testimony would have been limited to good-soldier evidence and easily rebutted by appellant's two convictions. Furthermore, appellant received only two months confinement despite facing a maximum of twelve months. Finally, as already captured in this opinion, appellant requested a punitive discharge during sentencing. Against this backdrop, we find MSG SH's testimony would have had no impact on appellant's sentence and therefore appellant has failed to establish prejudice in this case. *See Id*. at 687.

*Post-trial Ineffective Assistance of Counsel Allegation*

In his second assignment of error, appellant alleges he was denied post-trial effective assistance of counsel when his trial defense counsel failed to include two letters in the post-trial matters submitted to the CA pursuant to Rules for Courts-Martial [hereinafter R.C.M.] 1105 and 1106. In support of this allegation, appellant offers only his post-trial affidavit. In his affidavit, appellant states CPT TS failed to submit two letters appellant had given to CPT TS to include in his post-trial clemency matters. One of these letters was purportedly authored by Ms. WO, the woman appellant married while still married to Ms. WF. It is difficult to imagine

how a letter from Ms. WO, given appellant's bigamy conviction, could have aided appellant's request for clemency, and appellant adds to the mystery by neither providing a copy of this letter nor describing the contents of this letter in his affidavit. Appellant merely avers that CPT TS "received [the letter] through e-mail."

Appellant further states he wanted a letter he personally wrote included in his clemency request. Again, appellant fails to provide a copy of the letter to this court, and he does not describe the contents of the letter in his affidavit. Appellant merely alleges he "emailed [this] letter to [CPT TS]" and "I cannot access the email account at this time to retrieve our correspondence." Appellant further states CPT TS "edited the letter and sent it back to me" and "assured me that both letters would be submitted to the [CA]." Finally, appellant alleges CPT TS merely submitted a "short memorandum" authored by CPT TS and that appellant "never saw this memorandum prior to submission nor did I approve of its submission without my letters being attached."

Once again, because appellant and counsel have filed post-trial affidavits, that to some extent conflict, pursuant to *Ginn*, we analyze whether a post-trial evidentiary hearing is required. We conclude it is not.

Based on the second and fourth *Ginn* principles, we reject appellant's allegation that CPT TS was ineffective because he failed to submit a letter from Ms. WO, the very woman appellant married while still married to Ms. WF. We will discuss the applicability of the fourth *Ginn* principle below, but in regards to the second *Ginn* principle, based on appellant's failure to provide information concerning the content of Ms. WO's letter or how this letter would have possibly persuaded the CA to grant appellant clemency, we find this allegation "consists . . . of merely speculative or conclusory observations" and reject it on that basis. *Ginn*, 47 M.J. at 248.

Additionally, applying the fourth *Ginn* principle and assuming appellant's affidavit is factually adequate, "the appellate filings and the record as a whole 'compellingly demonstrate' the improbability" he submitted these letters to CPT TS, and we are able to "discount those factual assertions and decide the legal issue" without a post-trial evidentiary hearing. *Ginn*, at 47 M.J. at 248. The government moved to attach to the record Government Appellate Exhibit (Gov. App. Ex.) 1, which included emails between appellant and CPT TS. This motion was granted without objection. These emails paint a fairly compelling picture of a defense counsel repeatedly trying to communicate and coordinate with his client. (Gov. App. Ex. 1, Encls. 2-6). Appellant offered nothing in response to CPT TS's appellate filings and merely alleges CPT TS was ineffective by not submitting the two letters to the CA. Moreover, appellant has neither provided copies of the letters to this court and nor described the alleged content of the letters in his affidavit. *See United States v. Clemente*, 51 M.J. 547, 551 (Army Ct. Crim. App. 1999) (an

appellant has the responsibility to bring to an appellate court's attention facts rather than mere speculation and relief cannot be granted, under *Strickland*, based on mere speculation).

In his affidavit, CPT TS denies appellant provided him any letters to be submitted to the CA with his post-trial matters. The record, with its appellate filings, now documents CPT TS's engagement with appellant regarding the submission of appellant's post-trial matters. In Enclosure 6, an email dated 14 September 2011 and addressed to appellant, CPT TS stated that a draft memorandum about which he had spoken "on the phone" with appellant was attached for appellant's review. This memorandum, except for appellant's endorsement and the date, mirrors the memorandum CPT TS ultimately submitted on appellant's behalf. In the email, CPT TS further advised appellant they had about three weeks to submit clemency matters.

In Enclosure 5, an email dated 28 September 2011 and addressed to appellant, CPT TS notified appellant that clemency matters were due on 7 October 2011 and he requested to discuss clemency matters with appellant.

In Enclosure 4, an email dated 6 October 2011 and also addressed to appellant, CPT TS notified appellant that: clemency matters were due the next day; CPT TS would submit the memorandum he had previously sent appellant; CPT TS had not received any documents from appellant; and that if there was anything appellant wanted to submit, he needed to provide it to CPT TS as soon as possible.

In Enclosure 3, an email dated 7 October 2011 and addressed to appellant, CPT TS notified appellant he was submitting the attached memorandum as appellant's clemency request later that day and appellant should let him know if he wanted to make any changes or if appellant wanted to submit any other documents. The memorandum attached to the email is a copy of the one CPT TS submitted on appellant's behalf in regards to clemency.

Enclosure 2 contains three emails. The first email is the same email found at Enclosure 3. The second email is dated 7 October 2011 and sent by appellant to CPT TS in response to CPT TS's 7 October 2011 email. The email reads:

> Sir, I apologize for the lateness [sic]. I just got home last evening after a back procedure. I will look at it now. (Matter a fact [sic], deriving [sic] from my ongoing back issues from the Military operational exercise of which cause [sic] my back injury due to a military parachuting injury.) Would this be a positive point to make [?] Especially [sic] I have been on meds (mood altering and pain killing narcutics [sic] since 2003).

12

The third email is dated 8 October 2011 and is sent by CPT TS in response to appellant's email. In this email, CPT TS stated the clemency matters had already been submitted, but if appellant wanted "to submit a personal letter or anything else for the CG [commanding general] to consider" he should send them to CPT TS and he would do his best to add those matters to the clemency request. Captain TS further informed appellant that it would be at least a week before the CA took action in his case. The CA took action on appellant's case on 14 October 2011.

In addition, pursuant to the written post-trial and appellate rights guidance provided to appellant (App. Ex. III) and the oral guidance provided to appellant by the military judge at trial, appellant was clearly on notice of his responsibility to stay in touch with CPT TS concerning the submission of clemency matters. Further, in acknowledging his responsibility to stay in contact with CPT TS, appellant authorized CPT TS, both on the record and in writing, to submit matters on appellant's behalf as CPT TS deemed appropriate. Therefore, appellant is limited to alleging the submission by CPT TS was deficient.

Finally, we note that although appellate defense counsel requested additional time to file a brief in reply to appellee's brief, a request that this court granted, appellate defense counsel, to date, has not offered anything in response to the government's brief, CPT TS's affidavit, or the appellate documents and emails. *See Clemente*, 51 M.J. at 552 (appellant failed in his burden to affirmatively prove deficient performance where he failed to advise the court of "what favorable evidence he was deprived" of giving to the convening authority).

In sum, while appellant's affidavit raises facts involving ineffective assistance of counsel during the post-trial stage of his court-martial, the record as a whole and the appellate filings "compellingly demonstrate" the improbability of those facts. *Ginn*, 47 M.J. at 248. Thus, under *Strickland*, this court discounts appellant's factual assertions. Appellant has failed to demonstrate that counsel's performance was deficient during the post-trial portion of his court-martial. *See Strickland*, 466 M.J. at 687; *Ginn*, 47 M.J. at 248.

## CONCLUSION

On consideration of the entire record, the submissions of the parties, and those matters personally raised by appellant pursuant to *Grostefon*, 12 M.J. at 431, we hold the findings of guilty and the sentence as approved by the convening authority correct in law and fact.

Accordingly, the findings of guilty and the sentence are AFFIRMED.

FOXX—ARMY 20110272

Judge GALLAGHER and Judge HAIGHT concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

14