# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
PEDE, TOZZI, and HAIGHT
Appellate Military Judges

**UNITED STATES OF AMERICA, Appellee**
**v.**
**Private First Class MAURICE MCCORMICK, JR.**
**United States Army, Appellant**

ARMY 20120029

Headquarters, U.S. Army Special Forces Command (Airborne)
Karin G. Tackaberry and Tiernan P. Dolan, Military Judges
Lieutenant Colonel Alison C. Martin, Staff Judge Advocate

For Appellant: Major Jacob D. Bashore, JA; Captain John L. Schriver, JA (on brief); Major Vincent T. Shuler, JA; Captain Brian D. Andes, JA (on reply brief); Colonel Kevin Boyle, JA; Major Vincent T. Shuler, JA; Captain Brian D. Andes, JA (on supplemental brief); Lieutenant Colonel Jonathan F. Potter, JA; Captain Brian D. Andes, JA (on specified issue).

For Appellee: Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major Robert A. Rodrigues, JA; Captain Benjamin W. Hogan, JA (on brief and supplemental brief); Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Captain Benjamin W. Hogan, JA (on specified issue).

19 December 2014

---------------------------------
OPINION OF THE COURT
---------------------------------

PEDE, Chief Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of accessory after the fact to attempted unpremeditated murder, violation of a lawful regulation, and three specifications of aggravated assault, in violation of Articles 78, 92, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 878, 892, 928 (2006) [hereinafter UCMJ], respectively. The military judge sentenced appellant to a dishonorable discharge, confinement for twelve years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved eight years of confinement and the remainder of the sentence as adjudged.

This case is before us for review under Article 66, UCMJ.  The parties submitted their initial briefs, and this Court specified three more issues.  Collectively, two issues briefed by the parties warrant discussion but no relief.[1]  The first issue we address concerns an allegation of ineffective assistance of counsel in the pre-sentencing portion of appellant's trial.  Additionally, in our Order we specified the following issue:

> WHETHER THIS COURT CAN AFFIRM APPELLANT'S AGGRAVATED ASSAULT CONVICTIONS AND HIS CONVICTION FOR ACCESSORY AFTER THE FACT TO ATTEMPTED MURDER, WHERE APPELLANT WAS A PRINCIPAL TO THE AGGRAVATED ASSAULTS BUT WAS AN ACCESSORY AFTER THE FACT TO ATTEMPTED MURDER, AND THE CRIMES AROSE FROM THE SAME COURSE OF CONDUCT.  *SEE UNITED STATES v. FOUSHEE*, 13 M.J. 833 (A.C.M.R. 1982); *UNITED STATES v. MCCREA*, 50 M.J. 194 (A.C.M.R. 1975).

## LAW AND DISCUSSION

### I.      Ineffective Assistance of Counsel

Appellant alleges that he was denied his Sixth Amendment right to effective assistance of counsel at his pre-sentencing hearing when defense counsel failed to conduct a proper investigation and present vital evidence to the military judge.  Under the two-prong test to establish ineffective assistance of counsel, we find that the performance of appellant's trial defense counsel was neither deficient, nor did appellant suffer prejudice.  *Strickland v. Washington*, 466 U.S. 668, 694 (1984); *United States v. Wean,* 45 M.J. 461, 463-64 (C.A.A.F. 1997).

### a.      Performance of Counsel

In a sworn affidavit, appellant states that he gave his civilian defense counsel, Mr. H, a list of people that appellant wanted to testify on his behalf at his pre-sentencing hearing.  Appellant states that the list included twelve noncommissioned officers and enlisted soldiers, four of whom provided affidavits containing what

---

[1] Appellant's other assignments of error do not warrant relief.  The matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) do not warrant relief.

testimony they would have provided had they taken the stand.[2] Appellant claims that he expected Mr. H to contact these individuals and that they would have testified on his behalf. Appellant also claims that he later found out that Mr. H did not contact the potential witnesses. None of these putative witnesses testified at his trial.

Of the numerous potential witnesses listed by appellant, only two of these potential witnesses completed affidavits expressly providing the expected content of their expected testimony, stating that they were not contacted by appellant's defense counsel, and expressing their willingness to testify at trial. Thus, appellant has not established "the truth of the factual allegations that would provide the basis for finding deficient performance" for the other potential witnesses. *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007); *see also United States v. Clemente,* 51 M.J. 547, 551 (Army Ct. Crim App. 1999) ("To establish that his counsel's performance . . . fell below an objective standard of reasonableness, the appellant must demonstrate that the witnesses were available to testify and that their testimony would have assisted the defense.") (citing *United States v. Russell*, 48 M.J. 139, 141 (C.A.A.F. 1998)).

Staff Sergeant (SSG) KF stated that she was not contacted by an attorney prior to trial and was available to testify. She worked in the same headquarters building as appellant and never saw him get mad or lose his temper. She believes that a lengthy prison sentence was not appropriate in this case and that appellant has rehabilitative potential. Staff Sergeant MT was a supervisor and friend to appellant. He states that appellant was non-violent, humble, peaceful, and calm. He has a positive view of appellant's rehabilitative potential. Both SSG KF and SSG MT would deploy with appellant.

To address appellant's claims, this court ordered affidavits from appellant's former defense counsel. In his affidavit, Mr. H states that appellant did not give him a list of military members; rather, Mr. H states this list was provided to appellant's initial military defense counsel who passed it on to a subsequently assigned military

---

[2] Appellant also attached affidavits to his brief from three individuals that were not listed. Two of these affidavits only confirm they were not contacted by paralegals or counsel on appellant's behalf. The third was from a co-accused, SPC J, who was the primary subject in the case. He states in his affidavit that appellant had no knowledge of what was going to take place and had nothing to do with the shooting or committing an assault. However, this co-accused testified as a government witness during the merits of appellant's trial, and his testimony was inconsistent with his affidavit attached to appellant's appellate brief.

defense counsel.[3]  In the affidavits from appellant's former military defense counsel, they confirm appellant provided them a list of military members, and counsel indicated (in detail) that the defense team made reasonable attempts to contact all of the potential witnesses provided by appellant.  While they were able to make contact with some of the potential witnesses, they were unsuccessful with others.[4]

Within the affidavits, appellant's defense counsel state that their sentencing theme ("that one night should not define PFC McCormick") drove their tactics for the pre-sentencing hearing and that they evaluated witnesses accordingly.  They also focused on family and friends "to show that he had a very good support system in the civilian community, back at home, and that this evidence would best demonstrate his potential to re-enter society and be a productive citizen."

During the pre-sentencing hearing, the defense called one military witness, Sergeant First Class Smith, two of appellant's sisters, and appellant for an unsworn statement.   Sergeant First Class Smith had over twenty years of service, including nearly daily professional interactions with appellant for nine to ten months.  His opinion was that appellant's duty performance was "exceptional" and his knowledge of appellant's crimes did not change his opinion.  The sisters testified that appellant had a tough childhood while raised in a single parent household, but that he was raised with good values, was a good student, and attended college before entering the military.  The defense also introduced six letters from appellant's family and friends depicting his good character and asserting that he was deserving of a second chance.

Upon review of all of the material in this case, including the appellate and supplemental briefs of both parties, appellant's affidavit, the affidavits of the potential witnesses attached to appellant's brief, the affidavits of appellant's defense counsel[5], and the transcript and evidence presented during appellant's pre-sentencing

---

[3] Mr. H states he was given a list of civilian witnesses, family, and friends, and he contacted everyone on that list.

[4] The list of potential witnesses from appellant's military defense counsel contains eleven of the twelve witnesses mentioned in appellant's affidavit as well as two of the three affiants to the affidavits submitted with appellant's brief that were not included in appellant's affidavit list.

[5] We note conflicts between appellant's affidavit and the affidavits of defense counsel in appellant states he gave a list of military witnesses to his civilian counsel, Mr. H and that this list included SSG KF.  Mr. H states that he was not given a list of military members, but instead that list was given to military defense counsel.

(continued . . .)

hearing (including appellant's enlisted records brief showing he was at his first military duty station for less than one year when the crimes occurred), we do not find the level of advocacy by any of appellant's defense counsel fell below the standards set for practitioners before military courts. *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991). Therefore, we find appellant received effective assistance of counsel. *Id.*

### b. Prejudice

Finally, even were defense counsel's performance deficient, we are convinced that under the totality of all the circumstances in this case (to specifically include appellant's brief military career, the offenses of which he was convicted, the maximum sentencing exposure, and the pre-sentencing case), appellant did not suffer prejudice from the performance of his defense counsel, and appellant was not deprived of a fair trial "whose result is reliable." *Strickland*, 466 U.S. at 687. Therefore, appellant is not entitled to relief for his claim of ineffective assistance of counsel.

### II. Accessory After the Fact

### a. Additional Background

In short, appellant was the driver (but not the shooter) in a drive-by-shooting targeting another occupied vehicle. As the driver, appellant aided and abetted the shooter, precipitating appellant's convictions for aggravated assault. The shooter himself, however, ultimately fired thirteen rounds into the targeted vehicle, evidencing the shooter's intent to commit murder. Appellant then drove away from the scene and helped cover up the shooting, arguably making appellant an accessory after the fact to the shooter's attempted murder of the targeted vehicle's occupants.

The events unfolded as follows: after an altercation with Specialist (SPC) H in a bar near Fort Bragg, North Carolina, appellant and SPC J concluded they would follow SPC H. After the altercation, SPC J re-gained possession of a handgun that he had loaned to another soldier earlier in the evening, and SPC J carried the

---

(. . . continued)

Also, the military defense counsel state the list they were given did not include SSG KF. Applying the principles set out by our superior court in *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997) we do not order a hearing pursuant to *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967), because appellant cannot establish prejudice, even assuming that appellant provided his counsel with SSG F's contact information.

handgun into a car driven by appellant (and also occupied by SPC S). Specialist J testified that he told appellant he wanted to fight SPC H, that he wanted to hurt SPC H, and that he wanted to do grievous bodily harm to SPC H. After following a vehicle occupied by SPC H onto Fort Bragg, appellant maneuvered his vehicle beside the vehicle occupied by SPC H. Specialist J testified that he believed he and appellant were agreeing to ". . . shoot out the window." Specialist J then fired thirteen rounds into the SPC H-occupied vehicle. Specialist J further testified that he intended severe harm to SPC H and knew that SPC H and others in the targeted vehicle could be killed by those shots. Specialist J testified that appellant told him that he hid the pistol. Specialist J also testified that appellant came up with a false alibi for all three occupants of the vehicle.

### b. Discussion

A "perpetrator of [a] substantive offense, either as the principal actor or aider and abettor, . . . cannot be an accessory after the fact to his own offense." *United States v. Foushee*, 13 M.J. 833, 835 (A.C.M.R. 1982). Because appellant was a principal only to aggravated assault, however, he could also potentially be an accessory after the fact to the more serious (but distinct) offense of attempted murder, even though the shooting was one transaction.

Both appellant's conviction under Article 78 (accessory after the fact to attempted murder) and his conviction under Article 128 (aggravated assault) involve the conduct of SPC J, the principal actor, who fired the actual shots. We note that although the principal's underlying conduct is similar for both charges, the underlying charged offenses themselves are different – attempted murder versus aggravated assault. Therefore, the time-honored rule that one cannot commit an offense and, as a consequence, be an accessory after the fact to commission of the same offense does not apply, particularly under the facts in this case. *See id*.

Due apparently to exigencies of proof, the government charged appellant as a principal in the alternative under both Article 80 (attempted murder) and Article 128 (aggravated assault). Our superior court has noted "that attempted murder requires a specific intent to kill." *United States v. Roa*, 12 M.J. 210, 212 (C.M.A. 1982) (citation omitted). Appellant was convicted of Article 128, but acquitted of Article 80. We find it was reasonable for the military judge to have concluded that at the time the principal fired the shots, appellant did not share the principal's intent to kill the passengers in the automobile, and therefore appellant was not guilty of attempted murder. *See id*. ("[A] person may be an aider and abettor to a lesser degree than the principal if he did not share the criminal intent or purpose as the active perpetrator.")

It is also reasonable, however, to conclude that after SPC J fired thirteen shots, but before appellant started assisting in covering the tracks of SPC J's crime,

appellant realized SPC J intended to kill the occupants. Therefore, appellant's actions to cover up the shooting attack made him guilty of attempted murder as an accessory after the fact. *See id*. at 835-36 ("[T]here is no legal reason why [one] could not be an accessory after the fact to the greater offense as well as [be] individually guilty as an aider and abettor to the lesser offense.") In this case, the military judge found the appellant guilty of the aggravated assaults but not the attempted murder. The appellant was then found guilty as an accessory to the attempted murder – a separate and more serious offense.[6] We find no error in the findings of guilt to both the Article 78 and Article 128 charges.[7]

While the conduct in question, that is, the driving of the car and the shooting constitute the basis for both the aggravated assault and the attempted murder charges, the requisite intent differs between them. As a matter of law, this is a critical point in determining whether an accessory after the fact charge may stand after a finding of guilt on the lesser offense of aggravated assault.

Importantly, the military judge apparently recognized this point of law, and given the identical conduct supporting both charges, merged the charges for sentencing, but let them stand for findings. Appellant's intent and the timing of that intent permit us to affirm the accessory after the fact conviction.

---

[6] After the military judge announced general findings, civilian defense counsel moved for special findings, arguing in part that one cannot "be convicted as a principal and accessory [after the fact] for *the same conduct*." (emphasis added). The military judge noted that the "crime of attempted murder is a different substantial [sic] offense than that of aggravated assault with a dangerous weapon . . . and leave it at that." While a military judge shall make special findings upon request by a party, that request must be made before general findings are announced. Rule for Courts-Martial 918(b). Here, civilian defense counsel made an untimely request for special findings and the military judge need not have provided them.

[7] We also note that the military judge granted a defense motion to treat the Article 78 and Article 128 offenses as multiplicious for sentencing. However, this case was tried before our superior court decided *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012), where it held "[a]s a matter of logic and law, if an offense is multiplicious for sentencing it must necessarily be multiplicious for findings as well." In our view, the military judge's ruling merged the offenses for sentencing. Had the case been tried after *Campbell*, we are convinced the military judge would have applied the doctrine of unreasonable multiplication of charges for sentencing. *See id*. (applying that doctrine to sentencing).

Finally, this case demonstrates that when a common criminal enterprise escalates beyond the original plan, it is possible for a participant's criminal liability to devolve, that is, it is passed or transmitted from one actor to another. In such a case, it is not enough to say that the same course of conduct makes co-actors equally culpable of the same offense. In other words, the *actus reus* may be identically shared, but the *mens rea* may diverge. *See, e.g.*, *United States v. Simmons*, 63 M.J. 89, 93-94 (C.A.A.F. 2006) (concluding that an appellant did not share his co-actor's intent to commit assault and that therefore aider and abettor liability did not attach). One of the parties may in fact be totally surprised by the escalation. In such a case, the conduct – and the crime – at least for one of the participants transforms. With such a 'break' in common intent, the less culpable actor's post-offense conduct in the enterprise may reduce his culpability from that of a principal, to that of an accessory after the fact. Such was the result in this case. *See Foushee*, 13 M.J. at 835.

## CONCLUSION

After consideration of the entire record of trial, appellant's assignments of errors, and the matters personally raised by appellant pursuant to *Grostefon,* the findings and sentence as approved by the convening authority are AFFIRMED.

Senior Judge TOZZI concurs.

HAIGHT, Judge, concurring in part and dissenting in part:

I concur with the majority's resolution of the claim of ineffective assistance of counsel. I also agree with the majority that there is a legally viable exception to the general legal principle that a principal cannot be an accessory after the fact to his own offense. However, I disagree with the majority that we should apply that particular exception to the facts and circumstances of this case. Accordingly, I would dismiss the accessory after the fact offense as an unreasonable multiplication of charges or as factually insufficient.

Appellant aided and abetted his co-actor in the shooting of a firearm into a vehicle with three occupants. After that intentional aggravated assault with a loaded firearm, appellant then was an accessory after the fact by, among other activities, assisting the shooter in hiding "the weapon and creating a false story of the events to mislead an investigation by local authorities." For this criminal behavior, the government charged appellant with a perplexing combination of offenses. Among other charged offenses, appellant was charged as a principal with three counts of attempted premeditated murder and three separate counts of the lesser included offense of aggravated assault by shooting at his victims with a loaded firearm. Appellant was also charged with accessory after the fact to attempted premeditated murder for his aforementioned efforts to "cover up the shooting."

All three of the aggravated assaults were lesser included offenses of the greater three attempts of premeditated murder and should not have been separately charged. *See* Rule for Courts-Martial 307(c)(4) discussion ("In no case should both an offense and a lesser included offense thereof be separately charged"); *United States v. Nealy*, 71 M.J. 73, 76 (C.A.A.F. 2012) ("[W]hen a convening authority refers a charge to a court-martial, any [lesser included offenses] of that charge are referred with it, and need not be separately charged and referred.") (citations omitted); *see also generally United States v. Dacus*, 66 M.J. 235 (C.A.A.F. 2008); *United States v. Grijalva*, 55 M.J. 223 (C.A.A.F. 2001); *United States v. Weymouth*, 43 M.J. 329 (C.A.A.F. 1995). I wholly reject any notion that the government charged these offenses in the alternative or due to "exigencies of proof." Any such presumption is completely undercut by trial counsel's concluding remark of his opening statement, "The government is confident that after hearing all of the evidence in this case, you will find the accused guilty, first and foremost, of attempted premeditated murder and then you will also find the accused guilty of the remaining charges and specifications." It is plain that from preferral of charges to trial, the government fully intended to impermissibly convict appellant not only of separately charged lesser included offenses but also as an accessory after the fact to his own charged crime of attempted premeditated murder. This overreaching should not be condoned.

"A person may not be found guilty of that [accessory after the fact] offense if he was the perpetrator of the substantive offense, either as the principal actor or as an aider and abettor, because he cannot be an accessory after the fact to his own offense." *United States v. Foushee*, 13 M.J. 833, 835 (A.C.M.R. 1982) (citing LaFave and Scott, *Criminal Law*, § 66, p. 523 (1972); *United States v. Taylor*, 11 M.J. 840 (A.C.M.R. 1980)). After acknowledging this general rule, our predecessor court continued that if an aider and abettor had a lesser criminal intent or purpose than the active perpetrator, then "[i]n that event, there is no legal reason why he could not be an accessory after the fact to the greater offense as well as being individually guilty as an aider and abettor to the lesser offense." 13 M.J. at 835-6. I do not disagree but do find the facts of *Foushee* provide enlightening context to this dicta.

In that case, the accused was charged with both assault with intent to commit murder and accessory after the fact to assault with intent to commit murder. "After both sides rested, the trial judge required the prosecution to elect between the two charges, whereupon the trial counsel chose to proceed with the accessory offense." *Id*. at 834-35. The evidence revealed that Private (PV1) Foushee assisted his co-actor in a fist fight and his culpability as an aider and abettor consequently extended only to an assault and battery. *Id*. at 836. During the affray, PV1 Foushee's co-actor increased the level of violence and, unbeknownst to PV1 Foushee, stabbed their victim with a knife. *Id*. Thereafter, upon learning of the stabbing, PV1 Foushee was an accessory after the fact to his co-actor's greater crime by, among

other things, helping clean blood off the knife. *Id.* The facts in *Foushee* are vastly different than in the current case.

Here, appellant aided and abetted the discharge of a firearm at close range into an occupied vehicle. Then, he attempted to conceal that firearm. Whereas PV1 Foushee's assistance after the fact extended to a knife with which he had zero prior involvement, appellant's assistance after the fact extended to a firearm of which he had full knowledge and which was the very criminal instrument used to perpetrate appellant's own crime of aggravated assault. In other words and more simply stated, I do not believe appellant was assisting his co-actor to cover up some greater crime committed independently by that co-actor. To the contrary, I believe appellant was endeavoring to cover up his own offense: the shooting into a vehicle. The assistance rendered to his co-actor was incidental.

In that light, because dual convictions of the lesser crime of aggravated assault and of accessory after the fact to the greater crime of attempted murder may be legally viable under facts different than those found here, I turn to the concept of unreasonable multiplication of charges. In *United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001), our superior court endorsed several factors to guide our analysis of whether charges have been unreasonably multiplied. Three of these factors convince me that appellant's convictions of an aggravated assault by shooting and of accessory after the fact to that shooting constitute an unreasonable multiplication of charges. First, appellant objected at trial that the assaults and the accessory after the fact offense addressed the "same transaction and occurrence" and requested special findings as well as merger for purposes of sentencing. The military judge did consider the two offenses as one for sentencing. Second, as outlined above, these offenses are not aimed at distinctly separate criminal acts. Instead, these offenses address the same criminal conduct, just at different points along the time continuum. The two principals acted in concert to shoot into a vehicle and then the two continued to act in concert to cover up their crime. Third, also as outlined above, the prosecution overreached in the drafting of these charges. This overreaching evidenced itself at trial when the government intended and attempted to secure separate convictions not only of lesser included offenses but also a conviction of accessory after the fact to one's own crimes. It was only the military judge that noted, after the entry of findings, the different levels of intent required for attempted murder than for aggravated assault with a dangerous weapon.

I would dismiss the accessory after the fact offense either as an unreasonable multiplication of charges or as factually insufficient, reassess the sentence, and because the military judge considered the two offenses as "multiplicious for sentencing," I would affirm the approved sentence.



FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court