# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Warrant Officer One TONY L. BISHOP**
**United States Army, Appellant**

ARMY 20150441

Headquarters, Eighth Army
Mark A. Bridges, Military Judge
Colonel Craig A. Meredith, Staff Judge Advocate

For Appellant: Captain Daniel C. Kim, JA (argued); Lieutenant Colonel Charles D. Lozano, JA; Captain Heather L. Tregle, JA; Captain Katherine L. DePaul (on brief); Lieutenant Colonel Melissa R. Covolesky, JA; Major Andres Vazquez Jr., JA; Captain Katherine L. DePaul, JA (on reply brief); Colonel Mary J. Bradley, JA; Major Christopher D. Coleman, JA; Captain Katherine L. DePaul, JA; Captain Daniel C. Kim, JA (on supplemental brief);

For Appellee: Captain Cassandra M. Resposo, JA (argued); Colonel Mark H. Sydenham, JA; Lieutenant Colonel A. G. Courie, III, JA; Major Melissa Dasgupta Smith, JA; Captain Christopher A. Clausen, JA (on brief); Colonel Mark H. Sydenham, JA; Lieutenant Colonel A. G. Courie, III, JA; Major Cormac M. Smith, JA; Captain Cassandra M. Resposo, JA (on supplemental brief)

26 May 2017

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FEBBO, Judge:

Appellant alleges his counsel were ineffective during trial and cites multiple deficiencies in performance. We reject all but one. The defense counsels' strategic and tactical decisions during the merits and presentencing were reasonable. We agree defense counsel were deficient in preparing appellant for his unsworn statement during the presentencing phase of trial. However, appellant has failed to establish prejudice from the deficiency.

BISHOP—ARMY 20150441

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of assault consummated by a battery upon a child under sixteen years of age, in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928 (2012) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a dishonorable discharge and confinement for six months.[1]

We review this case under Article 66, UCMJ. Appellant assigns two errors, alleging ineffective assistance of counsel[2] and unreasonable multiplication of charges.[3] The first merits discussion but no relief; the second merits brief discussion in a footnote but no relief. We have considered matters personally asserted by appellant under *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982); they do not warrant relief.[4]

---

[1] Appellant is a Warrant Officer One. Since he was not a commissioned officer at the time of trial, the only authorized discharge options available to the military judge were no punitive discharge or a dishonorable discharge. The military judge did not have the option of considering a dismissal or bad-conduct discharge as part of the sentence. *See* Rule for Courts-Martial [hereinafter R.C.M.] 1003(b)(8)(B).

[2] Appellant was represented by a civilian defense counsel, Mr. GH, and a military defense counsel, Captain (CPT) JS. At the time of trial, CPT JS was on active duty and detailed as appellant's U.S. Army Trial Defense Service (TDS) military defense counsel.

[3] We do not find an unreasonable multiplication of charges. The two specifications of assault were aimed at distinctly separate criminal acts. Specification 1 was focused on appellant striking BB's shoulder and arm with an electrical cord inside their apartment. Specification 2 was focused on appellant pushing BB into a wall outside their apartment and injuring his face. The two specifications did not exaggerate appellant's criminality and did not unfairly increase appellant's punitive exposure. There was no evidence of prosecutorial overreach or abuse in drafting the charges. *See United States v. Quiroz*, 55 M.J. 334, 338-39 (C.A.A.F. 2001)

[4] Appellant asserts that his defense counsel were ineffective during the merits portion of trial for not conducting a competent investigation, not interviewing witnesses, and not presenting evidence of his step-son's prior false allegations of abuse. We have reviewed the record of trial and do not find that defense counsel were deficient during the findings phase of trial. Even if we were to assume deficiency, appellant has not shown prejudice. The government's evidence of the assault, to include medical evidence, photos of BB, eyewitness testimony, and appellant's admissions to law enforcement, was overwhelming. "[I]n any case in

(continued . . .)

## BACKGROUND

### A. Findings

In April 2014, appellant was assigned with his family to the Republic of Korea. Appellant's step-son BB was fifteen years old, had special needs, and had long-term behavioral health issues. On 3 April 2014, appellant learned BB was bragging in public about smoking marijuana and skipping school. When BB returned to their apartment, appellant and his spouse (BB's mother) confronted BB about his misbehavior. BB was not apologetic and smirked at his mother. In response, appellant became upset and went to retrieve a belt to punish his step-son. Appellant physically punished BB previously by laying him on a bed and striking him with a belt.

However, appellant could not find a belt, so he unplugged an electrical extension cord. Appellant used the extension cord to strike BB multiple times on his shoulder and arm. His step-son ran from the apartment screaming and ran down the hall. Appellant chased after his step-son and intentionally pushed him. This push caused BB to hit the floor and injure his face. Afterward, appellant dragged his step-son down the hall. Neighbors heard yelling in the hallway, saw appellant drag his step-son, and afterward observed blood in the hallway. Neighbors called the police and Emergency Medical Services (EMS).

When EMS arrived, BB lay unconscious and had difficulty breathing due to significant amounts of blood in his nose and mouth and was transported to the hospital for treatment. As a result of the assault, BB had four fractures to his face,

---

(. . . continued)

which the evidence is overwhelming, the choice as to which course of defense is best pursued is quintessentially a tactical one, not to be second guessed under *Strickland*." *Hunt v. Smith*, 856 F.Supp. 251, 257 (D. Md. 1994) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Appellant also asserts his defense counsel were ineffective for advising appellant to be tried by military judge alone after the judge ruled against appellant's request for an expert assistant in the area of false confessions. Defense counsels' strategy and appellant's agreement to be tried by a military judge alone were reasonable given the charges and defense strategy at trial.

Finally, appellant also asserts there was dilatory post-trial processing of his record of trial. We find no due process violation caused by the government taking 205 days to complete the 753-page record of trial.

swelling of the face, linear lacerations[5] on his left shoulder and arm, and injuries to his right wrist. BB required a dental procedure to save his teeth. BB told medical providers appellant got angry with him, hit him with an extension cord, and threw him on the floor, which caused the injuries to BB's face and teeth. Appellant's spouse stated to the medical care provider that her son tripped on his flip-flops when he ran from the apartment and stumbled into the wall by accident.

An agent from the Air Force Office of Special Investigations (OSI) questioned appellant. At first, appellant denied hitting his step-son. Appellant eventually confessed to the assault and stated when he could not find his belt, he unplugged an extension cord from the wall and used it to strike BB. BB began screaming and ran from the apartment. Appellant chased BB, and when BB would not stop appellant pushed BB twice, who fell to the floor. Appellant then dragged his step-son down the hallway.

The defense theory at trial was appellant gave a false confession to OSI and his step-son fabricated the allegations. At trial, BB recanted his prior statements about appellant assaulting him and testified that he was actually injured riding his skateboard and slipping in the hallway. He testified that he made up the allegations of physical assault by appellant since he was angry for getting grounded. Appellant also testified on the merits and denied he assaulted BB.

At trial, the government attempted to introduce evidence of prior domestic violence against the step-son. The defense was successful in excluding any prior child abuse allegations during trial.

The record shows a defense team who devoted significant effort toward contesting, and even offering alternative explanations for, the forensic medical evidence and appellant's admissions to law enforcement. The matters submitted by appellant on appeal show an appellant who was confident that recantations would result in an acquittal.

*B. Sentencing*

Prior to beginning the presentencing phase at the trial, the military judge confirmed directly with appellant that he understood his rights to present evidence in extenuation and mitigation, including his right to testify or make an unsworn statement. He also confirmed appellant had fully discussed his rights with his defense counsel.

---

[5] At trial, a government expert on child abuse and general pediatrics testified that BB had several "looped abrasions" on his body. The marks were made by a "flexible cord or looped object" and could not have been caused accidentally.

4

The only presentencing evidence presented by the government was appellant's Officer Record Brief (ORB).

The defense presentencing case included calling BB's therapist and appellant making a twelve-line unsworn statement. Appellant's entire unsworn statement is as follows:

> Sir, I respect your opinion. I do love my family very, very much. These felony convictions are really, really going to cause a big issue in my life. I know you're a judge, so I know you know the effect that they have. I just really would like the opportunity to make a difference in my family's life and continue being there for my family. I've been the sole provider for my family for the last 15 years we've been together. I just think it's going to have a significant impact for me to be away from them for an extended amount of time. I'll also like the opportunity to continue to serve in the Army; although, that may not work out. I'd like that opportunity. That's all I have to say.

After appellant made his unsworn statement, the government argued for four years confinement and a dishonorable discharge. The civilian defense counsel's presentencing argument to the military judge focused on minimizing appellant's assaults, shifting focus to appellant's spouse for problems in the family, advocating for the family to be reunited after nine months of being separated, and avoiding any sentence to confinement.

### C. Appellant's Affidavit on Appeal

On appeal, to support his allegation of ineffective assistance of counsel, appellant submitted three affidavits[6] in support of his claim that his civilian defense counsel Mr. GH[7] failed to adequately prepare for the presentencing phase of trial.

---

[6] After this court ordered oral argument, appellant submitted an affidavit along with a copy of the "Good Soldier Book" he would have wanted the military judge to consider prior to sentencing. Appellant also submitted a document and affidavit prepared by the U.S. Army Audit Agency which calculated the estimated retirement benefits appellant would receive during his life expectancy if he retired as a Warrant Office One with twenty years of service.

[7] Appellant's civilian attorney, Mr. GH, was the lead defense counsel. Appellant's affidavits and criticisms of ineffective assistance of counsel are focused on his

(continued . . .)

Appellant makes three broad claims. First, appellant states that he was not aware of the importance of presenting witnesses to testify on his behalf. If he had known, he swears he would have called presentencing witnesses to testify about his good duty performance and would have assembled a "Good Soldier Book" for the military judge to consider. Second, appellant states his defense counsel failed to present evidence about the effect of a punitive discharge on his retirement and medical benefits. Appellant states his defense counsel's argument for minimal confinement made it appear appellant cared more about confinement than a punitive discharge. Third, appellant states his defense counsel did not help him prepare his unsworn statement.

### D. Defense Counsel Affidavits

In response to appellant's allegation of ineffective assistance of counsel, we ordered the government to obtain affidavits from appellant's two trial defense counsel. The affidavits state, in pertinent part:

Mr. GH stated he asked appellant for a list of sentencing witnesses that served with him during his military career. He also advised appellant there was a risk of calling good military character witnesses during the merits. Namely, cross-examination could reveal incidents of prior domestic violence against appellant's step-son. Mr. GH's normal practice is for the client to prepare a Good Soldier Book. In appellant's case, it was the defense counsel's strategy for appellant to testify about "his career, his less than stellar job performance, and lack of military achievement, so that [Mr. GH] could dovetail this [sic] into the false confession defense." The false confession defense was focused on appellant's "low intelligence" which was a "large risk factor to false confessions." In response to the questions about whether counsel assisted appellant in preparing his unsworn statement and whether Mr. GH explained the importance of the presentencing phase of trial, Mr. GH's answer provided no details and was simply "Yes."

Mr. JS, then CPT JS at the time of trial, stated appellant frequently ignored the professional advice of his defense counsel. Mr. JS explained he prepared appellant for presentencing, but appellant's spouse convinced appellant he would be acquitted and would not need a presentencing case. Appellant would defer to his spouse's advice. For example, his spouse advised against appellant accepting a beneficial plea agreement. Defense counsel and the government discussed a possible

---

(. . . continued)
civilian defense counsel's alleged deficiencies. However, "we evaluate the combined efforts of the defense as a team rather than evaluating the individual shortcomings of any single counsel." *United States v. Garcia*, 59 M.J. 447, 450 (C.A.A.F. 2004).

plea agreement that would have protected appellant's retirement benefits after serving a period of confinement. Mr. JS stated appellant's defense counsel prepared appellant to testify about his career and effect of a discharge on his family. They also prepared appellant's spouse to testify about the effects of a discharge and loss of retirement benefits on the family. Mr. GH asked appellant for a list of sentencing witnesses. Mr. JS followed up with appellant, but he provided no potential witnesses to testify on his behalf. Mr. JS and appellant discussed the risks of using character witnesses during the merits. Rather than prepare a "Good Soldier Book," the defense counsel "made a strategic decision to present these matters through Appellant's testimony." This strategy allowed the defense to utilize appellant's "testimony as evidence of a false or coerced confession, which was essential in both the merits and pre-sentencing phase of this case." Defense counsel spent a "great deal of time preparing Appellant for all testimony." However, "appellant's spouse attempted to interfere and influence his statement in a manner which made her look better." "Appellant refused to execute an unsworn statement in an appropriate or helpful manner."

Pursuant to *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997), we have analyzed whether a post-trial evidentiary hearing is required. After applying the *Ginn* principles, we find such a hearing is not required in this case. *Id*. at 248. Considering the third *Ginn* factor, appellant's affidavit is factually adequate, and the government's affidavits do not contest the fact appellant desired to submit extenuation and mitigation evidence at sentencing to avoid a punitive discharge. Defense counsels' affidavits also state their strategy was to introduce extenuation and mitigation evidence through appellant's unsworn statement. Any factual disputes about the presentencing phase of trial are not relevant in deciding the legal issue of ineffective assistance of counsel on appeal.

## LAW AND ANALYSIS

### A. Test for Ineffective Assistance of Counsel

Military accused have a constitutional and statutory right to the effective assistance of counsel at trial. *United States v. Bolkan*, 55 M.J. 425, 427 (C.A.A.F. 2001) (citing U.S. Const. amend. VI; UCMJ art. 27, 10 USC § 827; *United States v. MacCulloch*, 40 M.J. 236 (C.M.A. 1994)); *see also United States v. Gooch*, 69 M.J. 353, 361 (C.A.A.F. 2011). "The right to counsel is probably the paramount right in ensuring that the adversarial system functions properly." *Bolkan*, 55 M.J. at 427. This constitutional right applies "not only to the merits phase of trial, but to each critical stage in a criminal proceeding where substantial rights of a criminal accused may be affected," which includes the sentencing phase of a military court-martial. *United States v. Dobrava*, 64 M.J. 503, 505 (Army Ct. Crim. App. 2006) (citing *United States v. Alves,* 53 M.J. 286, 289 (C.A.A.F. 2000)).

We review claims that an appellant did not receive effective assistance of counsel de novo. *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015); *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012). "In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687, (1984)). This test results in a "doubly deferential" review of counsel's performance. *Cullen v. Pinholster*, 563 U.S. 170, 171 (2011) (internal quotations and citation omitted).

Under the first *Strickland* prong, appellant must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. The relevant issue is whether counsel's conduct failed to meet an objective standard of reasonableness or whether it was outside the "wide range of professionally competent assistance." *Id.* at 690. In determining this issue, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The presumption of competence is rebutted by "a showing of specific errors made by defense counsel" that were "unreasonable under prevailing professional norms." *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001).

When assessing *Strickland*'s second prong for prejudice, we require a showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. That requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 112 (2011). "An appellant must establish a factual foundation for a claim of ineffectiveness; second-guessing, sweeping generalizations, and hindsight will not suffice." *United States v. Davis*, 60 M.J. 469 (C.A.A.F. 2005) (citing *United States v. Key*, 57 M.J. 246, 249 (C.A.A.F. 2002); *Alves*, 53 M.J. at 289; *United States v. Gray*, 51 M.J. 1, 19 (C.A.A.F. 1999).

As far as presentencing procedures, ineffective assistance of counsel can occur when counsel fail to introduce evidence that would be of value to the accused in extenuation and mitigation. *United States v. Boone*, 49 M.J. 187, 196 (C.A.A.F. 1998).

### *B. Deficient Performance During Presentencing*

In short, appellant asserts the defense counsel were completely ineffective in preparing for presentencing and throughout the presentencing phase of trial. His criticisms are focused on four areas of the defense's presentencing case.

### 1. *Preparation and Presentation of Appellant's Unsworn Statement*

On appeal, appellant asserts his short unsworn statement of twelve lines clearly showed he was not adequately prepared by his defense counsel.  Although we find that appellant's defense counsel were deficient in preparing and presenting appellant's unsworn statement, it is not solely based on the length of appellant's unsworn statement.  Many short, focused unsworn statements can be very effective and persuasive during sentencing.  Similarly, even when an appellant does not submit any unsworn statement, it does not automatically establish prejudicial error.

The defense counsel stated in their affidavits their strategy was to present appellant's military service through his unsworn statement.  Appellant's civilian defense counsel asserts he intended not to introduce the appellant's military records since they could have undermined the defense strategy that appellant gave a false confession to OSI.  However, the defense sentencing strategy of using appellant's unsworn statement to testify about his military service was not supported by the record.  First, defense counsel did not ask appellant any questions about his career and military service during the merits or presentencing phase of trial.  Second, any concern about undermining appellant's false confession defense became moot when the military judge found him guilty of the charges.  We find while it may have made sense to limit the introduction of some military service evidence during findings, to not undermine the defense, it made little sense to limit military service evidence once appellant was convicted.  Military judges understand the difference between arguments and evidence presented during the merits and presentencing phases of trial.  Even if there was a concern about conflicting testimony on the merits and sentencing about appellant's intelligence and susceptibility to giving a false confession, defense counsel had over eighteen years of military service to draw upon and highlight to the military judge.

The "decision to make an unsworn statement is personal to the accused." *United States v. Marcum*, 60 M.J. 198, 209 (C.A.A.F. 2004).  Strategic and tactical decisions are within the sole discretion of the defense counsel.  *United States v. Dobrava*, 64 M.J. 503, 505 (Army Ct. Crim. App. 2006).  However, when the defense strategy on sentencing is to deliver key pieces of information through the unsworn statement, failure to adequately plan and prepare appellant for his unsworn statement is not a sound strategy.

Appellant's unsworn statement of twelve lines did not highlight his assignments, schools, awards, deployments, family situation, and desire to avoid a punitive discharge.  Mr. GH states that appellant failed to execute their agreed-upon sentencing strategy and deliver an effective unsworn statement.  Sometimes a well-prepared sworn or unsworn statement can fail in execution, tone, demeanor, and include surprise testimony.  In those situations, we would not find deficient performance by defense counsel.

Our criticism of the defense counsels' performance in this case is focused on the preparation and strategic and tactical decisions made *before* appellant's unsworn statement, and not on the twelve-line outcome during trial. Defense counsels' reasonable concern about possibly opening the door to government rebuttal of facts made during an unsworn statement[8] should have made defense counsel even more zealous in their preparation of appellant's unsworn statement.

Defense counsel did not assist appellant in preparing a written, unsworn statement that could have been read during sentencing and would not have invited rebuttal. The defense counsel did not prepare questions for the appellant to answer during his unsworn statement that would have been designed to limit rebuttal.

From our review of the record and briefs, to include Mr. GH's lack of detail in his affidavit about preparing appellant for sentencing and the unsworn statement, we find appellant's defense counsel were deficient in preparing appellant for his unsworn testimony.

*2. Presentation of Evidence on Retirement and Medical Benefits*

Appellant is critical of his defense counsel for not submitting a valuation of his retirement during sentencing. Considering the record of this case, appellant's defense counsel were not deficient by failing to present evidence to the military judge about the potential loss of retirement and medical benefits and the effect such a loss would have on appellant's family.

For a soldier close to being retirement eligible, presenting the projected future value of a soldier's retirement pay is relevant and admissible during sentencing. *United States v. Luster*, 55 M.J. 67 (C.A.A.F. 2001); *see also United States v. Boyd*, 55 M.J. 217, 221 (C.A.A.F. 2001). The exclusion of evidence of expected financial loss may result in prejudicial error. *Id.* As a general practice for a soldier close to retirement, it is good advocacy to present evidence of the soldier's retirement and medical benefits to underscore the soldier's proximity to retirement and the projected economic loss if adjudged a punitive discharge.

Based on appellant's ORB, the arguments by government and defense counsel, and testimony by appellant, the military judge was fully aware appellant had over

---

[8] Prior to sentencing when asked by the military judge, appellant acknowledged he understood his right to make a sworn or unsworn statement. Appellant stated he understood an unsworn statement could be made orally, in writing, or both. He also acknowledged the unsworn could be made personally, by counsel on his behalf, or both. Appellant acknowledged the government could offer evidence to rebut any statement of fact in an unsworn statement.

eighteen years of service and was close to being eligible for retirement. Appellant testified on the merits and informed the military judge he enlisted in the Army and had been on active duty since 1996. The ORB specifically showed appellant entered the Army in September 1996 and had 228 months of active federal service. Appellant's charge sheet included his current pay.

Members of the military, to include the military judge and military panels, generally know that a soldier is eligible for retirement at twenty years of active federal service and the two and a half percent per year of service formula used to calculate retirement pay. More specifically, military judges routinely instruct panels on the effect of a punitive discharge on a soldier's pay and entitlements. *See* Dep't of Army, Pam. 27-9, Legal Services: Military Judge's Benchbook [hereinafter Benchbook], ch. 2, n. "effect of punitive discharge on retirement benefits" (10 September 2014). Appellant's defense counsel were not deficient in failing to provide the military judge with a U.S. Army Audit Agency (USAAA) calculation of the projected value of appellant's retirement.

### 3. *Presentation of Presentencing Witnesses and Evidence*

Appellant is critical of his defense counsel for not putting on additional presentencing witnesses and is also critical of the one defense witness called during presentencing.

Appellant claims his counsel never explained the importance of presentencing witnesses. Appellant asserts if had known about the importance of presentencing witnesses, he would have requested the presence of "numerous individuals" from his career that could have testified about his good duty performance. However, the record does not support appellant's assertion he would have presented favorable sentencing witnesses at trial. The military judge explained to appellant that he could present sentencing evidence to include documentary evidence and sentencing witnesses. Appellant stated on the record he understood his rights to present extenuation and mitigation evidence at trial.

Appellant's counsel, Mr. JS, asserts the defense did not call sentencing witnesses because appellant did not provide defense counsel the names of potential witnesses. This rational by defense counsel is normally not very persuasive. Defense counsel have a professional obligation to zealously represent their client and cannot simply rely on their client to provide information for sentencing. *United States v. Weathersby*, 48 M.J. 668, 672 (Army Ct. Crim. App. 1998) ("Counsel do not satisfy their professional obligation to zealously represent their client's interests during sentencing merely by reacting to information supplied by a reluctant client."). However, the record on appeal establishes appellant has not met his burden of showing defense counsel were deficient by failing to present favorable sentencing witnesses.

As part of his R.C.M. 1105/1106 post-trial matters,[9] appellant included only one clemency letter from a civilian who attended his church. On appeal, appellant asserts he would have called two captains and three warrant officers as presentencing witnesses. "When claiming ineffective assistance of counsel for failure to present the testimony of a particular witness, an appellant must specifically allege the precise substance of the witness' missing testimony." *United States v. Clemente*, 51 M.J. 547, 550-51 (Army Ct. Crim. App. 1999) (citing *United States Russell*, 48 M.J. 139, 141 (C.A.A.F. 1998); *United States v. Moulton*, 47 M.J. 227, 229 (C.A.A.F. 1997), *cert. denied*, 522 U.S. 1114 (1998)). To support a claim for ineffective assistance of counsel, facts must be included in a statement by someone with personal knowledge that is a sworn affidavit or a declaration made under penalty of perjury for this court to consider the statement on appeal. *United States v. Cade*, 75 M.J. 923, 929 (Army Ct. Crim. App. 2016), *pet. denied,* 76 M.J. 133 (C.A.A.F. 2017).

Appellant has not provided affidavits from the witnesses of what they would have testified about on his behalf. Appellant has failed to establish counsel were ineffective for failing to call defense witnesses during presentencing. *Clemente*, 51 M.J. at 550. Additionally, defense counsel had a reasonable tactical reason for not calling character witnesses to discuss appellant's military career.

Appellant's counsel were concerned calling military character witnesses on the merits could open the door to a "did you know line of questioning by the government, which would have revealed a violent past (i.e., prior CDVs) [Childhood Domestic Violence]." This same concern would apply to cross-examination of presentencing witnesses. Defense counsels' strategy to limit the government's ability to introduce unfavorable sentencing evidence was sound. *United States v. Perez*, 64 M.J. 239, 244 (C.A.A.F. 2006) (defense counsel's decision to reference "good soldier" testimony given during findings portion of trial, without calling them to the stand during sentencing was not ineffective assistance; counsel avoided dangers of cross-examination by prosecution).

The record shows the government was aware of prior misconduct, which included a family history of domestic violence against BB and appellant's failure to report his spouse's abuse of BB. Appellant's statement to OSI included admissions appellant was aware of prior violence by his wife against BB. The government unsuccessfully attempted to introduce appellant's knowledge of the prior incidents of child abuse by appellant's spouse. During the merits phase of the trial, the defense counsel was successful in limiting Military Rule of Evidence [hereinafter Mil. R. Evid.] 404(b) evidence.

---

[9] Appellant was represented by a different defense counsel when he submitted his R.C.M. 1105/1106 post-trial clemency matters.

BISHOP—ARMY 20150441

The R.C.M. 1105/1106 post-trial matters also included a twenty-two-page excerpt of appellant's Official Military Personnel File (OMPF). These matters included his ORB, official photo, Meritorious Unit Commendation, and Non-Commissioned Officer Evaluation Reports (NCOERs). On appeal, appellant asserts he would have presented a "Good Soldier Book" to the military judge. The "Good Soldier Book" includes documents and pictures not contained in his OMPF. If presented as testimony at trial, the "Good Soldier Book" would not need to be disclosed as reciprocal discovery under R.C.M. 701 and could not be used against appellant on the merits. Introducing the "Good Soldier Book" at sentencing would have required the military judge to relax the rules of evidence for its admission. *See* R.C.M. 1001(c)(3). Relaxing the rules of evidence would have similarly exposed appellant to the risk of opening the door to government evidence not favorable to appellant. Therefore, we do not find the appellant's defense counsel deficient in not submitting a "Good Soldier Book" to the military judge.

A review of the record supports the defense counsels' contention that their strategy was based on a concern about opening the door to appellant's and his spouses' history of abuse against BB.[10] Through diligent pretrial litigation, appellant's counsel successfully excluded from trial acts and omissions by appellant of other incidents of violence against BB.[11]

Accordingly, the trial and sentencing proceeded as if the charged offenses were a one-time event instead of the tragic culmination that was perhaps more accurate. Having successfully portrayed appellant in this manner, defense counsel would be rightfully cautious in opening the door to government rebuttal.

---

[10] We do not and did not consider allied documents outside the record of trial. *Cade*, 75 M.J. at 928. However, the allied documents provided to the defense counsel contained appellant's prior criminal history, which include three arrests, one of which was for an assault causing bodily injury on a family member. Medical records showed BB was hospitalized seven times for injuries, including a one month-long hospitalization. A military police report showed appellant was titled for willfully disobeying a lawful order of a superior commissioned officer. Family Advocacy Systems of Records (FASOR) showed appellant was the subject in two child abuse incidents, one of which involved BB.

[11] A Letter of Concern from appellant's battalion commander was admitted for the limited purpose of establishing appellant's motive to fabricate to OSI. *See generally* Army Reg. 600-37, Personnel—General: Unfavorable Information, ch. 3 (19 Dec. 1986). The Letter of Concern was for reports of two prior domestic disturbances and appellant's wife driving without a license in Korea.

13

#### 4. *Defense Counsel Preparation of Ms. Jessica Acker's Testimony*

Appellant asserts his trial defense counsel were deficient in preparing the defense's sole presentencing witness other than appellant. We do not find appellant's defense counsel were deficient in preparing Ms. Acker for her presentencing testimony.

Appellant's counsel called Ms. Acker, who was BB's therapist and also a witness during the merits phase of trial. She testified she provided approximately thirty-five therapy sessions for BB over seven or eight months. She did not believe that the abuse actually occurred. She testified about BB's behavioral health issues and concluded it would be detrimental to BB if appellant were removed from the home. On cross-examination during presentencing, Ms. Acker stated she was not aware appellant was convicted of assaulting BB and the assault resulted in broken bones to BB's face.

As a follow-up to the cross-examination, the military judge asked her if her opinion would change knowing that appellant was found guilty of abusing BB. In response, Ms. Acker testified "[i]f it [the abuse] was a known fact and I believed it to be true, then it would definitely change my opinion."

The presentencing hearing started immediately after findings were announced and the government rested after admitting appellant's ORB into evidence. In hindsight, it may have been prudent for defense counsel to ask for a short recess. This recess would have allowed them to inform Ms. Acker about the results of trial before she testified and determining if the conviction changed her opinion. However, trials are fluid and pretrial statements sometimes are different from trial testimony. Witnesses are sworn to provide truthful testimony and the answers may be a surprise.

Normally, unforeseen conflict in witness testimony at trial is not deficient performance by a defense counsel. Ms. Acker was not called to discuss the effects of a punitive discharge on appellant and the family. Her purpose was to limit any confinement. Ms. Acker's testimony was effectively used to support the defense sentencing argument that BB had medical issues and the family needed to be reunited after months of separation. The defense counsel were ultimately successful in limiting appellant's sentence to confinement.

#### 5. *Presentencing Argument by Defense Counsel*

Appellant asserts during the presentencing argument his civilian defense counsel suggested appellant lied under oath. During the trial, appellant testified he did not assault or abuse his step-son. He alleged that his step-son's injuries were caused by a skateboard accident earlier that day and his son tripping into the wall

outside their apartment. During the presenting argument, Mr. GH described the events of the assault as "a bad night," and stated appellant made "mistakes" and may have gone too far in punishing his step-son. Appellant asserts the defense counsel should have avoided mentioning the guilty findings. Instead, appellant believes the sentencing argument should have focused on the impact of a punitive discharge on the appellant and his family. Appellant speculates the military judge would not have sentenced appellant to a punitive discharge if presented a sentencing argument focused on appellant's prior service and impact of a punitive discharge on appellant and his family.

As an initial matter, appellant does not include in his affidavits any factual basis that would support his contention the defense counsel's sentencing argument improperly suggested he lied under oath and the military judge was unaware of the financial impact of a punitive discharge on appellant and his family. It is appellant's responsibility to "bring to an appellate court's attention facts rather than mere speculation" that trial defense counsel's conduct was deficient. *United States v. Russell*, 48 M.J. 139, 140-141 (C.A.A.F. 1998). We do not find appellant's civilian defense counsel improperly inferred that appellant lied to the court and was not deficient in his presentencing argument to the court.

The presentencing argument is a tactical decision properly made by a defense attorney at trial. *Brookhart v. Janis*, 384 U.S. 1, 8 (1966) (Harlan, J., writing separately) ("A lawyer may properly make a tactical determination of how to run a trial even in the face of his client's incomprehension or even explicit disapproval."). "An attorney undoubtedly has a duty to consult with the client regarding important decisions, including questions of overarching defense strategy. That obligation, however, does not require counsel to obtain the defendant's consent to every tactical decision." *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (internal quotations and citations omitted). It is clear the civilian defense counsel's strategy during the presentencing argument was to minimize appellant's offenses to a single "bad night" and to minimize appellant's sentence to confinement. Considering the government argued for four years confinement—and appellant received six months—the defense counsel's argument to limit the term of confinement was effective.

Given the military judge's findings, and that both assaults occurred within a short period of time on the same day, defense counsel's tactical decision on how to argue presentencing was not deficient. Defense counsel argued against confinement so that the family could be reunited. The defense counsel did not state the appellant lied to the court and did not concede a punitive discharge should be adjudged. Military judges, in particular, understand arguments during findings and sentencing may differ. As stated above, military judges routinely instruct panels on the effects of a punitive discharge. Defense counsel was not deficient in failing to remind the military judge about the adverse effects of a punitive discharge during presenting argument.

*C. Appellant Has Not Established Prejudice*

As outlined above, defense counsels' overall strategy in the presentencing phase of trial was not deficient. The defense counsel made reasonable tactical decisions to exclude government rebuttal evidence.

Appellant argues the military judge would not have adjudged a punitive discharge if his defense counsel presented more extenuation and mitigation evidence and appellant provided more emphasis in his unsworn statement on the effect of a punitive discharge on appellant and his family. Although we do find appellant's defense counsel deficient in failing to prepare appellant for his unsworn statement, we do not find there was a reasonable probability the results of the proceedings would have been different.

An "unsworn statement is an authorized means for an accused to bring information to the attention of the court." Benchbook, ch. 2. Even without a fully prepared unsworn statement, the military judge was provided considerable information during findings and sentencing about appellant's military career, family situation, and close proximity to retirement. In his unsworn statement, appellant acknowledged the military judge knew the effect of the convictions. Appellant explained that over the last fifteen years he was the sole provider for his family. Appellant informed the military judge he wanted to continue to serve in the Army.

Appellant's ORB and testimony at trial provided details about appellant's military career for the military judge to consider. The ORB showed appellant had eighteen years and eight months of active federal service and was deployed seven times. His awards—including six Army Commendation Medals—were included on his ORB. In addition, the ORB also included appellant's completion of military schools and courses. The charge sheet included appellant's date of initial entry on active duty and his monthly basic and foreign duty pay.

During the merits phase of trial, the military judge asked questions about the appellant's career. Appellant explained his general technical (GT) score was 110, he completed high school, and completed some college courses. Appellant explained he enlisted in 1996 as a Patriot Missile Crewmember. During the next fourteen years of active duty, appellant was promoted to the rank of sergeant first class and attended two advanced non-commissioned officer (NCO) courses. Appellant discussed his over four years of warrant officer duties as a "Patriot Tech Tactician." Although appellant tried to minimize his selection as a warrant officer and performance at Warrant Officer School, it is apparent from his NCO promotions, selection to attend advanced schools, and selection as a warrant officer, that appellant received good performance evaluations.

In appellant's case, the military judge knew about appellant's eighteen years and eight months of military service at time of trial and the effects of a punitive discharge on appellant and his family. The military judge also knew about BB's medical and behavioral health issues. He found appellant guilty of serious offenses and the defense counsel were successful in limiting the sentence to confinement argued by the government.

Finally, omnipresent in this case is the tactical concern that the government was waiting in the wings with rebuttal evidence of additional misconduct by appellant. Appellant's attorneys successfully excluded this evidence from both findings and sentencing. This tactic may have left appellant with a spartan presentencing presentation, but we do not question the wisdom of that decision with the benefit of appellate hindsight. *See Brookhart,* 384 U.S. at 8.

Therefore, we do not find appellant has shown prejudice resulting from his defense counsel's deficiency during the presentencing hearing.

## CONCLUSION

The findings of guilty and sentence are AFFIRMED.

Senior Judge MULLIGAN and Judge WOLFE concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

17